# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

DANIEL LOUIS JACKSON,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No.  C19-2017-LTS
(Crim. No. CR16-2057-LTS)

**MEMORANDUM, OPINION AND ORDER**

## I.    INTRODUCTION

This matter is before me on Daniel Jackson's motion (Civ. Doc. 1) to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 due to ineffective assistance of counsel and prosecutorial misconduct.  Jackson's trial counsel has filed a court-directed response (Civ. Doc. 12) and the Government has filed a resistance (Civ. Doc. 15). Jackson then filed a response (Civ. Doc. 17) and two motions (Civ. Docs. 19, 23) to amend his § 2255 motion, the first of which the Government resisted (Civ. Doc. 21). For the reasons discussed herein, I find that an evidentiary hearing is not required.

## II.    BACKGROUND

The Eighth Circuit Court of Appeals summarized the events leading to the case as follows:

> On October 17, 2016, Daniel Jackson and his co-defendant Jason Centeno traveled from Muscatine, Iowa, to the Citizens State Bank of Hopkinton, Iowa. While Jackson waited in the car, Centeno entered the bank and took video of its interior. Three days later, Jackson (in the company of Centeno and their roommate Edgar Pauley) went to the Muscatine Wal-Mart and purchased black pantyhose, ski hats, and zip ties.

> On the morning of October 21, 2016, Jackson and Centeno donned the disguises they purchased at Wal-Mart and entered the bank. Once inside,

the two men leapt over the counter, whereupon Jackson displayed a knife, used a zip tie to secure a teller's hands behind her back, and took money from the drawer. Meanwhile Centeno brandished a .38 special revolver and demanded that a second teller give him the money from her drawer. Having accomplished his task with the first teller, Jackson approached the second teller and ordered her to the ground.

While this was going on, the bank's manager entered the bank, having just re-parked his car, to find the robbery in progress. Jackson accosted him, ordered him to the ground, and secured his hands with a zip tie, inadvertently dropping a zip tie on the floor. Jackson's DNA was later found on both zip ties.

Jackson and Centeno made their getaway with approximately $8,225 of purloined cash in their possession. The pair then fled the state with Pauley, leaving the .38 revolver with Centeno's mother in New York and eventually making their way to Daytona Beach, Florida, where they were arrested.

*United States v. Jackson*, 913 F.3d 789 (8th Cir. 2019).

On December 14, 2016, Jackson was charged in an indictment with several counts related to bank robbery. Crim. Doc. 1. On September 28, 2017, he was charged with additional counts in a superseding indictment. Crim. Doc. 102. Specifically, he was charged with: count 1, armed bank robbery in violation of 18 U.S.C. § 2113(a), 2113(d), and 2; count 2, aiding and abetting the use, carrying, and brandishing of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1) and 2; count 3, conspiracy to commit armed robbery in violation of 18 U.S.C. § 371; and count 4, conspiracy to use, carry, and brandish a firearm during a crime of violence in violation of 18 U.S.C. § 924(o). Crim. Doc. 102.

On October 13, 2017, a jury convicted Jackson of counts 1s-4s. Crim. Doc. 133. On February 22, 2018, I sentenced Jackson to 180 months' incarceration. Crim. Doc. 176. The sentence included 96 months on each of counts 1s, 3s, and 4s, to be served concurrently, and 84 months on count 2s to be served consecutively to the concurrent

terms. Crim. Doc. 176. The Eighth Circuit denied Jackson's appeal on January 22, 2019. *Jackson*, 913 F.3d at 789.

Jackson filed the present motion on March 20, 2019, raising six claims of ineffective assistance of trial counsel and one claim of prosecutorial misconduct. Civ. Doc. 1. On initial review (Civ. Doc. 7), I directed Jackson's trial attorney, Jill Johnston, to file an affidavit and I directed the Government to respond.[1] Jackson then filed two motions to amend (Civ. Docs. 19, 23). The first, filed February 25, 2021, asserted a claim of eligibility for resentencing based on newly discovered evidence. Civ. Doc. 19. The second, filed April 12, 2021, asserted an additional claim of ineffective assistance of trial counsel. Civ. Doc. 23.

### III.  LEGAL STANDARD

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700,

---

[1] I also directed Jackson's appellate counsel, Heather Quick, to respond. However, a review of the parties' responses, (Civ. Docs. 11, 12, 15), reveals that Jackson's ineffective assistance of counsel claims are directed at his trial counsel.

3

704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition *if a factual dispute exists*." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (emphasis added). "The district court is not permitted to make a credibility determination on the affidavits alone." *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioners without first holding an evidentiary hearing."). However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *See New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (citation omitted).

## IV. ANALYSIS

Between his original motion (Civ. Doc. 1) and his motions to amend (Civ. Docs. 19, 23), Jackson raises seven claims of ineffective assistance of trial counsel, one claim of prosecutorial misconduct and one claim relating to a post-judgment expungement of a prior criminal conviction.

4

## A.      Ineffective Assistance of Counsel

Jackson argues his trial counsel was ineffective for failing to: (1) argue Jackson's arrest warrant lacked probable cause and therefore resulted in an unlawful arrest, (2) argue Jackson's Facebook messages and cell phone location data were obtained without a warrant, constituting an unconstitutional search, (3) argue Jackson's right to counsel had been violated during his initial appearance in the Iowa District Court for Delaware County, (4) argue Jackson's right to a speedy trial was violated, (5) argue Jackson's rights under the Confrontation Clause were violated, (6) preserve Jackson's rights to appeal jury instructions used during trial and (7) file a motion to exclude DNA evidence from Jackson's trial.

### 1.      Standards

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

5

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

Since a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

### 2.  *Ground One: Failure to Challenge Probable Cause of Arrest*
#### a.  *The parties' arguments*

Jackson argues that his trial counsel failed to challenge the probable cause of his arrest in (1) the state criminal complaint's omission of the names of individuals who provided information to Delaware County Sheriff John LeClere, the officer who filed the complaint and accompanying affidavit, and (2) the Government's use of evidence coming from a DNA search and the questioning of Edgar Pauley, Jackson's roommate. Civ. Doc. 1-1 at 4. Jackson argues this violated his right to due process for two reasons. *Id.* at 6. First, he argues the sole support for the issuance of the arrest warrant was the complaint, which Jackson argues lacked probable cause as it did not indicate "how the

6

sheriff knows, or why he believes" Jackson committed the crime. *Id.* Second, Jackson contends that DNA evidence and evidence obtained through witness statements of Edgar Pauley were fruits of an unconstitutional search in violation of the Fourth Amendment. *Id.* at 6.

In her affidavit (Civ. Doc. 12), Jackson's trial counsel, Jill Johnston, states that she did not believe probable cause of the arrest warrant was lacking. *Id.* at 2. In support of this assertion, Johnston relies on Iowa Code §§ 804.1 and 711.1. Section 804.1 states:

> A criminal proceeding may be commenced by the filing of a complaint before a magistrate. When such a complaint is made charging the commission of some designated public offense in which such magistrate has jurisdiction, and it appears from the complaint or from affidavits filed with it that there is probable cause to believe an offense has been committed and a designated person has committed it, the magistrate shall, except as otherwise provided, issue a warrant for the arrest of such person.

Iowa Code § 804.1(1). Section 711.1 defines and outlines the elements of robbery under Iowa law. Iowa Code § 711.1.

In addressing Jackson's contention about the source of Sheriff LeClere's information, Johnston states "it was clear at a minimum such facts were relayed to John LeClere by others." Civ. Doc. 12 at 2. Johnston further states Jackson's arrest warrant was sufficiently supported by its approval and issuance by a neutral and detached judge (Civ. Doc. 12-2), as well as "ample evidence contained in the discovery file." Civ. Doc. 12 at 2.

Johnston then addresses the collection of DNA evidence and statements made by Edgar Pauley that Jackson argues were fruits of an illegal arrest in violation of the Fourth Amendment. Regarding the DNA evidence, Johnston states that DNA was collected from Jackson pursuant to a legal search warrant and compared to DNA recovered from zip-ties at the scene of the bank robbery. Civ. Doc. 12 at 3. Johnston further states that Edgar Pauley was detained for questioning by law enforcement in Volusia County, Florida. Pauley, Jackson, and Jason Centeno were approached by officers when their

7

car was stuck in the sand on the beach. *Id.* Johnston asserts Pauley's statements are not fruits of an illegal arrest, as he was never arrested. *Id.* Johnston did file a motion (Crim. Doc. 60) challenging the admissibility of Pauley's statements based on the Due Process Clause of the Fifth Amendment. I denied this motion, finding the Due Process challenge to be premature as the substance of Pauley's testimony was not known at that time. Crim. Doc. 71. Johnston states she saw no valid grounds for bringing additional Fourth Amendment challenges to Pauley's statements, as there were no Fourth Amendment violations when Jackson's vehicle was stopped. Civ. Doc. 12 at 3.

The Government argues that Johnston performed within the range of reasonable professional standards when she declined to bring unmeritorious defenses. Civ. Doc. 15 at 16. The Government further states that the criminal complaint filed by Sheriff LeClere was not defective under Iowa law and that the complaint was not required to explicitly list the names of individuals who shared information with law enforcement. *Id.* The Government also argues Jackson's claims regarding the DNA evidence and witness statements are without merit. *Id.* The Government states that Jackson's DNA samples were obtained pursuant to a legal search warrant and that Pauley was never arrested so no Fourth Amendment violation occurred. *Id.*

### b. *Analysis*

#### i. *Probable Cause for Jackson's Arrest*

To establish probable cause for an arrest, the facts and circumstances must "lead a reasonable person to believe" the accused committed the alleged crime. *Veatch v. City of Waverly*, 858 N.W.2d 1, 4 (Iowa 2015) (quoting *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir. 2007)). To secure an arrest warrant, a police officer is required to supply a magistrate with "sufficient, reliably trustworthy information to support an independent judgement that probable cause exists." *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 563 (1971). Complaints and assisting affidavits are sufficient to establish probable cause. Iowa Code § 804.1. Where a magistrate has sufficient facts

8

to establish probable cause to issue an arrest warrant, "trial counsel's failure to attack the arrest warrant on this basis does not constitute ineffective assistance." *Munz v. Parr*, Civ. No. 84–61, 1991 WL 365063, *3 (N.D. Iowa July 10, 1991).

Here, the complaint and affidavit presented by Sheriff LeClere (Civ. Doc. 12-1 at 1-2) outlined facts sufficient to establish probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 111-112 (1975) ("[D]efined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."). Further, the issuance of the arrest warrant by a neutral and detached magistrate judge supports the determination that probable cause exists. *United States v. Olsen*, 487 F.2d 77, 82 (8th Cir. 1973) (considerable deference should be given to magistrate's finding of probable cause). Thus, Jackson's trial counsel's failure to challenge the probable cause basis of the arrest warrant was not deficient performance and did not fall below the objective standard of reasonableness. *See Lafler*, 566 U.S. at 163; *see also Strickland*, 466 U.S. at 687.

### ii. *DNA Evidence*

Obtaining DNA evidence through use of a buccal swab on the inner tissues of a person's cheek constitutes a search. *Maryland v. King*, 569 U.S. 435, 446 (2013). A search is reasonable where an officer has a valid search warrant. *United States v. DE L'Isle*, 825 F.3d 426, 431 (8th Cir. 2016) (citing *Riley v. California*, 134 S. Ct. 2473, 2482 (2014)) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness'."). A valid legal search warrant must comply with Fourth Amendment requirements. *Dalia v. United States*, 441 U.S. 238, 255 (1979).

Jackson argues the DNA evidence used at his trial resulted from exploitation of an arrest and detention that violated the Fourth Amendment. Civ. Doc. 1-1 at 3. Jackson relies on *United States v. Posadas*, No. 8:08CR238, 2008 WL 5423793, *1 (D. Neb. Dec. 29, 2008), to argue DNA evidence obtained from him following his arrest constituted "fruit of the poisonous tree." Civ. Doc. 1-1 at 3. *Posadas* is distinguishable

9

as, in that case, the court held the detention of the defendant to have violated the Fourth Amendment and excluded evidence obtained as a result of the unlawful detention. *Posadas*, 2008 WL 5423793, *8 (D. Neb. 2008). (Unlawful detention where law enforcement officers lacked reasonable suspicion.).

As explained above, however, the arrest warrant here was valid and did not violate Jackson's Fourth Amendment rights. The DNA evidence was then obtained from Jackson through a valid search warrant. Civ. Doc. 15 at 16. As such, the DNA evidence does not fall under the "fruit of the poisonous tree" doctrine. *See United States v. Yockey*, 654 F.Supp.2d 945, 958 (N.D. Iowa 2009) ("In a 'fruit of the poisonous tree' doctrine case, a constitutional violation has occurred, and the issue is whether law enforcement obtained evidence 'by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'") (quoting *United States v. Alvarez-Manzo*, 570. F.3d 1070, 1077 (8th Cir. 2009)) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). Because both the original arrest warrant and the subsequent search warrant were proper, Johnston's decision to not challenge the collection of the DNA sample was reasonable and does not constitute ineffective assistance of counsel.

### iii.    *Witness Statements*

"An individual may challenge a search under the Fourth Amendment if it violates the individual's 'reasonable expectation of privacy.'" *United States v. Cowan*, 674 F.3d 947, 955 (8th Cir. 2012) (quoting *United States v. Jones*, 132 S. Ct. 945, 950-53 (2012)); *see also Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). One does not have a reasonable expectation of privacy in the identity of one's car. *Cowan*, 674 F.3d at 955 ("'[T]he diminished expectation of privacy in an automobile, and that '[a] car has little capacity for escaping public scrutiny.'") (quoting *United States v. Knotts*, 460 U.S. 276, 281 (1983); *Cardell v. Lewis*, 417 U.S. 583, 590 (1974)). Additionally, a motorist has no such privacy interest in information contained in a license plate number. *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006) ("[S]o long

10

as the officer had a right to be in a position to observe the defendant's license plate, any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment.").

Individuals detained for a *Terry* stop[2] or traffic stop are not "subject to the dictates of *Miranda*." *United States v. Sanchez-Velasco*, 956 F.3d 576, 581 (8th Cir. 2020) (quoting *Berkemer v. McCarty*, 468, U.S. 420, 440 (1984)). Additionally, when officer has administered *Miranda* warnings and obtained a waiver of such rights, the "waiver has generally produced a virtual ticket of admissibility." *Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004). Statements made after a knowing and voluntary waiver of *Miranda* rights are admissible unless there was an earlier instance of coercion or calculated effort to undermine one's free will. *United States v. Briones*, 390 F.3d 610, 613-14 (8th Cir. 2004) (citing *Oregon v. Elstad*, 470 U.S. 298, (1985)). A claim of ineffective assistance of counsel for failure to file a motion to exclude evidence requires a failure "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *United States v. Kamerud*, No. CR 01-4060-MWB, 2008 WL 4280372, *16 (N.D. Iowa Sept. 16, 2008) (quoting *Strickland*, 466 U.S. at 687).

In this case, the record shows that the car Pauley, Jackson and Centeno occupied in Florida became stuck in the sand. The three men then encountered law enforcement. Pauley was detained for questioning and Jackson and Centeno were arrested. Civ. Doc. 12 at 3. Before Jackson's trial, Johnston attempted to exclude Pauley's testimony on Fifth Amendment grounds (Crim. Doc. 60). I found no evidence to suggest Pauley's statements to police were involuntary or coerced. Crim. Doc. 71. I also stated that a Due Process argument prior to Pauley's testimony at trial was premature. *Id*.

Pauley's waiver of his Miranda rights and my prior determination that his statements were not made involuntarily rendered those statements, and the evidence obtained from them, admissible. Crim. Doc. 71. Further, because Johnston made an

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968)

express, but unsuccessful, attempt to suppress this evidence, her performance was not constitutionally deficient such as to deprive Jackson of a fair trial. Instead, Johnston's attempts to exclude Pauley's testimony (Crim. Doc. 60) conform to the objective standard of reasonableness outlined in *Strickland*.

### 3. *Ground Two: Failure to Challenge Seizure of Evidence*

#### a. *The parties' arguments*

Jackson argues Johnston was ineffective for not challenging evidence gained pursuant to an allegedly unconstitutional search and seizure. Civ. Doc. 1-1 at 8. First, he claims his private Facebook messages and videos were seized without a warrant, in violation of his Fourth Amendment rights. *Id.* In his reply brief, Jackson makes an alternate argument that the search warrant for his Facebook messages was not supported by probable cause and was overly broad. Civ. Doc. 17 at 9. Second, citing *Carpenter v. United States*, 138 S. Ct. 2206 (2018), Jackson argues the use of a court order (rather than a search warrant) to seize cell-site information from his carrier, Sprint, invaded his reasonable expectation of privacy. Civ. Doc. 1-1 at 9.

Johnston states that contrary to Jackson's original motion, the Government obtained search warrants for both Jackson's Facebook account information (Civ. Doc. 12-1 at 5) and Jackson's cell phone (Civ. Doc. 12-1 at 10). As for the use of a court order to obtain cell-site information from Sprint, Johnston notes that *Carpenter* was decided eight months after Jackson's conviction. Civ. Doc. 12 at 4.[3]

The Government argues that Johnston's failure to file a meritless motion to suppress evidence obtained pursuant to search warrants does not amount to ineffective assistance of counsel. Civ. Doc. 15 at 18. The Government further argues that Jackson's

---

[3] Johnston recollects that the cell-site information used at trial was from Jason Centeno's phone, not Jackson's, meaning Jackson had no standing to assert a Fourth Amendment claim. Civ. Doc. 12 at 4. The Government states that this recollection is incorrect, as the cell-site data introduced at trial did come from Jackson's cell phone. Civ. Doc. 15 at 18 n.2.

arguments about the absence of search warrants are conclusory and lack support, as Jackson failed to identify legal grounds that would justify suppression of the evidence gathered from the search warrant. *Id.* Like Johnston, the Government notes that at the time cell-site location information was acquired, the law did not require the Government to obtain a search warrant. *See Carpenter*, 137 S. Ct. at 2206. Because the then-applicable law did not require a warrant, Johnston could not have argued that cell-site information was obtained illegally. Civ. Doc. 15 at 18.

### b.    *Analysis*

### i.    *Facebook Messages and Videos*

The Fourth Amendment establishes that "no Warrants shall issue, but upon probable cause," and such warrants must "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Probable cause for the issuance of a search warrant exists when, "if based on the totality of the circumstances set forth in the application and affidavits, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Johnson*, 528 F.3d 575, 579 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The determination of probable cause upon an independent review by a neutral and detached magistrate judge should be given considerable deference on review. *See Olsen*, 487 F.2d at 82.

The scope of a search warrant should not be "broader than can be justified by the probable cause upon which the warrant is based." *United States v. Burkhow*, No. 19-CR-59-CJW, 2020 WL 589536, *8 (N.D. Iowa Feb. 6, 2020) (quoting *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013)). There is a threat of encroaching upon one's privacy when generally searching a defendant's private social media account, such as Facebook, as such accounts can provide precise personal data and information to law enforcement. *Burkhow*, 2020 WL 589536 at *9 (citing *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017)). In determining whether a search warrant is overbroad, the

13

calculus must "accommodate the complexity of the crime under investigation," ultimately rendering the degree of specificity required by a search warrant to be "flexible" in light of the circumstances of the crime. *Burkhow*, 2020 WL 589536 at *10.

Jackson initially argued that his private Facebook information was obtained without a warrant. Civ. Doc. 1-1 at 18. This is wrong, as a search warrant was sought and obtained. Civ. Doc. 12-1 at 12-16. Jackson now contends that the warrant lacked probable cause. Civ. Doc. 17 at 9. However, the issuing judge found that the record before him established probable cause. Civ. Doc. 12-1 at 12. I agree. *See Olsen*, 487 F.2d at 82 (considerable deference should be given to magistrate judge's determination of probable cause) (citing *McCreary v. Sigler*, 406 F.2d 1264 (8th Cir.), *cert. denied*, 395 U.S. 984 (1969)).

Finally, Jackson argues the search warrant for his Facebook information was overly broad. The warrant outlined specific information to be seized, dating back to October 1, 2016, and including, among other things, photos, videos, private messages, and basic subscriber information. Civ. Doc. 12-1 at 12. The Government was required to execute the warrant by December 6, 2016. *Id.* I conclude that the search warrant was not overly broad.

For these reasons, Johnston did not fall below the objective standard of reasonableness in declining to challenge the issuance of the search warrant to obtain Jackson's Facebook information. Jackson has also failed to demonstrate that if Johnston had challenged this warrant, the challenge would have been successful and there would have been a reasonable likelihood of an alternative outcome.

### ii.    *Cell-site Location Information*

The Fourth Amendment protects the privacy rights of individuals, not merely places. *Katz*, 389 U.S. at 351. "[I]ndividuals have a reasonable expectation of privacy in the whole of their physical movements." *Carpenter*, 138 S. Ct. at 2217 (citing *United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J. concurring in the judgment).

14

Historical Cell Site Location Information (CSLI) obtained from a defendant's wireless carrier, "pursuant to an order issued under the Stored Communications Act (SCA), [is] the product of a search," to be protected by the Fourth Amendment. *Carpenter*, 138 S. Ct. at 2221. (The requirements that the Government show "reasonable grounds" for belief under the SCA fall well below probable cause requirement for a warrant.) 18 U.S.C. § 2703(d); *Carpenter*, 138 S. Ct. at 2210.

In measuring counsel's performance, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ragland v. United States*, 576 F.3d 597, 600 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). We look to counsel's conduct "at the time of his representation of the defendant. . . .". *Ragland*, 576 F.3d at 600 (quoting *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000)). Defense counsel's failure to "anticipate a rule of law that has yet to be articulated by the governing courts," does not render counsel's performance constitutionally ineffective. *Ragland*, 756 F.3d at 601 (citing *Fields*, 201 F.3d at 1028; *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005)). "[C]ounsel's failure to 'anticipate a change in the law' does not constitute ineffective assistance.'" *Ragland*, 756 F.3d at 601 (quoting *Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999)).

Jackson was convicted on October 12, 2017. Crim. Doc. 133 at 7. *Carpenter*, decided June 22, 2018, held that the SCA violated the Fourth Amendment. *See United States v. Reed*, 978 F.3d 538, 542 (8th Cir. 2020). However, the SCA was not recognized as unconstitutional at the time law enforcement officers relied on that statute to obtain a court order to gather Jackson's CSLI. *Id.* ("When the officers obtained the order here, they reasonably believed that Reed lacked a legitimate expectation of privacy in his CSLI because of the third-party doctrine, so the statute was not obviously unconstitutional."); *see also Morris v. Pennsylvania*, Civ. No. 15-1352, 2018 WL 5453585, *2-*3 (E. D. Pa. Oct. 29, 2018) ("To state, as Movant has, that pursuit of this issue on direct appeal would ultimately have been successful pursuant to law that had not yet come into existence, ignores the functionality of precedent and relies on misplaced

15

conjecture and surmise."). Under then-applicable law, Johnston's failure to challenge the CSLI order issued pursuant to the SCA did not fall below an objectively reasonable standard.

### 4. Ground Three: Failure to Argue Right to Counsel

#### a. The parties' arguments

Jackson argues Johnston was ineffective for failing to argue that Jackson's Sixth Amendment right to counsel was violated because he was not represented by counsel at his initial appearance before an Iowa state court judge. Civ. Doc. 1-1 at 10. Jackson states that at the initial appearance, he was informed of the charges against him, assessed bail in the amount of $250,000 and informed of a date for his preliminary hearing. *Id.* Jackson asserts he was prejudiced because he was not able to confront Sheriff LeClere at that time about the basis of his arrest warrant. Civ. Doc. 17 at 11.

Johnston states there were no grounds for raising a Sixth Amendment claim related to Jackson's initial appearance. Civ. Doc. 12 at 4. According to Johnston, Jackson made his initial appearance in the Iowa District Court for Delaware County on November 14, 2016,[4] and that attorney Ted Fisher entered his appearance for Jackson on November 29, 2016. *Id.* Jackson was then arraigned on December 6, 2016. *Id.* Johnston states that Jackson was not prejudiced by her failure to argue a Sixth Amendment violation because during the time he was not represented, Jackson did not make any incriminating statements to law enforcement that were used against him at trial. *Id.* at 5.

The Government argues that Johnston's strategic decisions not to argue a violation of Jackson's right to counsel fell within the boundaries of reasonable professional assistance and did not constitute deficient performance. Civ. Doc. 15 at 20. The

---

[4] Jackson disputes this date and argues that his initial appearance was on November 13, 2016. To the extent it matters, the docket shows that the initial appearance was on November 14, 2016. *See* Iowa Courts Online, https://www.iowacourts.state.ia.us/ESAWebApp/TIndexFrm (last visited June 30, 2021).

Government also states that Jackson's motion supports that he was represented by an attorney at every stage of the federal prosecution. *Id.* Finally, the Government reiterates Johnston's argument that Jackson was not prejudiced by the alleged failure to argue a right to counsel violation because Jackson failed to demonstrate that such alleged failure would have a reasonable probability of changing the outcome of his case. *Id.*

### b. Analysis

The Sixth Amendment right to counsel "does not attach until 'the initiation of adversary judicial criminal proceedings'. . . .". *United States v. Morriss*, 531 F.3d 591, 593 (8th Cir. 2008). On an initial appearance where a defendant "learns the charge against him and his liberty is subject to restriction," the defendant's Sixth Amendment right to counsel has been triggered. *Rothgery v. Gillespie County*, Tex., 554 U.S. 191, 213 (2008). "To succeed on a Sixth Amendment claim of ineffective assistance of counsel, defendant must show that there is a 'reasonable probability,' which is a probability sufficient to undermine confidence in the outcome, that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Strategic and tactical decisions made by counsel cannot successfully serve as the basis for an ineffective assistance of counsel claim. *See Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004).

Jackson does not contest the Government's argument that he made no incriminating statements to law enforcement officers between November 11, 2016 and November 29, 2016. Nor does he contest that he was represented by counsel at every stage of his federal proceeding. Thus, Johnston's decision to not raise a Sixth Amendment claim was not deficient. Even assuming Jackson was not represented at his initial appearance in state court, he has failed to allege, much less establish, a "reasonable probability" that the proceeding would have been different had Johnston raised a Sixth Amendment challenge.

17

### 5. *Ground Four: Failure to Argue a Speedy Trial Violation*

#### a. *The parties' arguments*

Jackson argues Johnston was ineffective for failing to argue that his rights under the Speedy Trial Act were violated due to the time between Jackson's arrest in Florida and the Grand Jury's return of the federal indictment in this district. Civ. Doc. 1-1 at 12. Jackson argues that under 18 U.S.C. § 3161(d)(1), the charges for which he was arrested on or about October 29, 2016, were based on the same conduct for which he was indicted on December 14, 2016. Civ. Docs. 1-1, 12. Relying on *United States v. Benitez*, 34 F.3d 1489, 1493 (9th Cir. 1994), he contends that state and federal authorities colluded to detain him in state custody until the federal indictment was returned so as to not trigger the requirements of the Speedy Trial Act. Civ. Doc. 1-1 at 12; *Benitez*, 34 F.3d at 1494 ("The Speedy Trial Act would lose all force if federal criminal authorities could arrange with state authorities to have the state authorities detain a defendant until federal authorities are ready to file criminal charges.").

Jackson alleges the following: (1) federal officials joined the investigation, (2) state authorities arrested Jackson and took him to be interrogated by the FBI, (3) during interrogation, Agent Samuels told Pauley if he became a witness for them, she could protect him, (4) Pauley became a witness for the federal government, (5) Jackson did not cause delay by fighting extradition, (6) during Jackson's detention, an employee of the Delaware County Jail took Jackson out of his cell and told him "they" wanted to see if Jackson was willing to give "them" the pass code to his phone (with "they" and "them" referring to the FBI investigators), (7) when he received a state-appointed attorney he was advised that the federal government was planning to pursue charges, (8) all evidence was immediately given to the federal authorities, (9) Jackson was detained in state custody until he was federally indicted and (10) the evidence used to indict Jackson derived from an illegal search and seizure. Civ. Doc. 1-1 at 12-13.

In her affidavit, Johnston states that Jackson was arrested in Florida on or about October 29, 2016, on an arrest warrant issued by the Iowa state court. Civ. Doc. 12 at

18

5. She then states that Jackson was then federally indicted on December 14, 2016 (Crim. Doc. 3), with a writ of habeas corpus ad prosequendum being issued that same day (Crim. Docs. 8, 10). Johnston states that this timeline shows Jackson was indicted before he was taken into federal custody. Civ. Doc. 12 at 5. She explains that the Speedy Trial Act's deadline for the return of a federal indictment begins to run only when there is a federal arrest or a summons, not a state court arrest. *Id.* As such, Johnston states there was no basis for her to argue a Speedy Trial Act violation. *Id.*

The Government argues Johnston's decision not to argue a violation of Jackson's right to speedy trial was within the range of reasonable professional assistance. Civ. Doc. 15 at 21. The Government also argues Jackson failed to explain how the outcome of his trial would have been different absent the alleged ineffective assistance.

### b. Analysis

The Speedy Trial Act provides that a federal indictment must be filed "within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. §3161(b). "Absent collusion between state and federal authorities, state arrest does not activate requirements of [the] federal Speedy Trial Act." *United States v. Sims*, 779 F.2d 16, 17 (8th Cir. 1985); *see also, United States v. Haynes*, 958 F.3d 709, 713 (8th Cir. 2020) (same). Importantly, "cooperation between state and federal authorities does not amount to unlawful collusion." *United States v. Williams*, 104 F.3d, 213 at 216 (8th Cir. 1997) (federal indictment issued the day after the defendant pleaded guilty to state charges arising from the same incident, though a clear miscommunication, was not evidence of collusion); *see also United States v. Al-Muqsit*, 191 F.3d 928, 939 (8th Cir. 1999) ("[W]ell established that '[cooperation between state and federal does not amount to unlawful collusion,'" but "at some point coordination between independent sovereigns may support an allegation of sham prosecution. . . ."). A delay between state arrest and federal indictment does not constitute evidence of collusion. *Haynes*, 958 F.3d at 713 (citing *Sims*, 779 F.2d at 17).

19

Given the undisputed factual circumstances and the applicable law, Johnston's decision to not raise a Speedy Trial Act argument was within the objective standards of reasonable performance outlined in *Strickland*. The federal indictment against Jackson was returned the same day he was taken into federal custody. Moreover, there is no evidence that communications between state and federal authorities rose to the level of collusion, as opposed to normal coordination of their respective prosecutions. Finally, Jackson has failed to show a reasonable probability that if Johnston would have raised a Speedy Trial Act argument, the outcome of his case would have been different.

### 6.      Ground Five: Failure to Argue a Confrontation Clause Violation

#### a.      The parties' arguments

Jackson argues Johnston was ineffective when she did not cross-examine Sheriff LeClere during pretrial appearances or at trial. Civ. Doc. 1-1 at 13. He further argues Johnston was ineffective when she did not file "a motion" based on the state arrest warrant. *Id.* Jackson asserts that Johnston's alleged failure to cross-examine LeClere about the basis of the arrest warrant is violative of his Sixth Amendment rights. *Id.*

Johnston states that LeClere was not called by the Government as a witness at any hearing or trial, meaning she did not have the opportunity to cross-exam him. Civ. Doc. 12 at 5. She notes that defense counsel may not compel the Government to call certain witnesses. *Id.* at 6. Johnston further states that she did not call LeClere as a witness because she had no reason to believe his testimony would be helpful to Jackson's defense. *Id.* Finally, citing *Crawford v. Washington*, 541 U.S. 36, 50-51 (2004), Johnston states that the Confrontation Clause was not implicated because LeClere's out-of-court statements from the complaint filed in state court were not introduced into evidence at trial. *Id.*

The Government argues that Johnston's decision not to call LeClere as a witness is within the presumption of reasonable trial strategy. Civ. Doc. 15 at 23. *See White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005) (counsel's decision to call witnesses generally

"is presumed to be reasonable trial strategy.").  The Government further argues that Jackson fails to rebut the virtually unassailable presumption of reasonableness by showing Johnston's efforts were superficial or otherwise lacking.  Civ. Doc. 15 at 23.  Finally, the Government argues Jackson failed to show prejudice by not having the opportunity to confront LeClere because (1) Jackson failed to argue that LeClere would have testified and his testimony would have been favorable to Jackson, (2) Jackson failed to explain how calling LeClere as a witness would have changed the outcome of the case and (3) the key evidence at trial (Jackson's DNA, testimony about Jackson's shoes, Jackson's Facebook messages and Jackson's CSLI) would not have been called into question by LeClere's testimony.  *Id.*

### b.    Analysis

For a claim of ineffective assistance of counsel for failure to call a witness, the court must "add the proffered testimony" of the witness "to the body of evidence that actually was presented at his trial."  *McCauley-Bey v. Delo*, 97 F.3d 1104, 1105-06 (8th Cir. 1996).  Based upon this hypothetical addition of evidence, "we must gauge the likely outcome of a trial based on this total body of evidence."  *Id.*  Factors to consider include: "(1) the credibility of all witnesses, including likely impeachment of one of the uncalled witnesses, (2) the interplay of the uncalled witnesses with the actual defense witnesses called, and (3) the strength of the evidence actually presented by the prosecution."  *Id.*  If the proffered testimony of the witness does not produce a reasonable probability that the outcome of the trial would be different, the ineffective assistance of counsel claim fails to prove prejudice."  *See id.*  Further, "a claim of ineffective assistance cannot be based on decisions that relate to a reasoned choice of trial strategy, even when it later may be shown improvident."  *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir.), *cert. denied*, 474 U.S. 922 (1985)).

Johnston's failure to cross-examine LeClere, or to call him as a witness, was well within the objective standards of reasonable performance outlined in *Strickland*.

Moreover, Jackson has failed to prove prejudice. He has not proffered any explanation of what LeClere's would have revealed. Nor is there evidence suggesting that cross-examination would have materially impeached the credibility of statements made in LeClere's affidavit. Finally, the evidence against Jackson was far more overwhelming than any potential testimony from LeClere.

### 7. *Ground Six: Failure to Preserve Appeal Rights*

#### a. *The parties' arguments*

Jackson argues Johnston was ineffective when she waived Jackson's right to appeal from a jury instruction. Civ. Doc. 1-1 at 14. Jackson argues he should be granted a new trial on count 2 of the superseding indictment (Crim. Doc. 102), aiding and abetting the use, carrying and brandishing of a firearm during a crime of violence. Civ. Doc. 1-1 at 14. Jackson asserts that Instruction No. 8 (Crim. Doc. 123-1 at 13-14), was plain error under *Rosemond v. United States*, 572 U.S. 65, 66 (2014) ("The trial court's jury instructions were erroneous because they failed to require that Rosemond knew in advance that one of his cohorts would be armed."). Heather Quick, Jackson's appellate counsel, states that she challenged this instruction on direct appeal but the Eighth Circuit found the argument was waived by failure to object at the trial court. Civ. Doc. 11 (citing *Jackson*, 913 F.3d at 789).

The Government argues that Jackson has failed to establish that Johnston's jury instruction decisions amounted to ineffective assistance of counsel. Civ. Doc. 15 at 25. The Government states that Jackson's argument is conclusory and fails to establish how Johnston strayed outside the range of reasonable professional assistance in agreeing to the instruction. *Id.* The Government also argues that Jackson failed to prove prejudice by failing to demonstrate a substantial likelihood that the jury would have acquitted him but for the erroneous jury instructions. *See Johnson*, 278 F.3d at 844. The Government cites the Facebook videos of Jackson firing the gun prior to the robbery as support that

Case 6:19-cv-02017-LTS-MAR   Document 26   Filed 08/12/21   Page 22 of 36

the jury could have reasonably concluded Jackson knew in advance that his co-conspirator would brandish a gun during the bank robbery.  Civ. Doc. 15 at 26.

###### b.    Analysis

To establish actual prejudice from an alleged failure to preserve error as to a jury instruction, a movant must show that the instruction "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Johnson*, 278 F.3d at 844 (citing *Frady*, 456 U.S. at 170) ("Once a defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum.").  Further, a movant must establish a "substantial likelihood that a properly instructed jury would have acquitted" the movant of the charge in question.  *Johnson*, 278 F.3d at 844.  The degree of prejudice resulting from an error in instruction must also be evaluated in the context of the events that took place at trial. *Frady*, 456 U.S. at 169.

Here, Jackson solely relies on *Rosemond* to support his argument that counsel's failure to preserve error based on Instruction No. 8 constituted prejudice.  Civ. Doc. 17 at 12-13.  In *Rosemond*, the Supreme Court held a set of jury instructions was erroneous when they failed to require the defendant knew in advance that one of his cohorts would be armed in the commission of a drug crime.  *Rosemond*, 572 U.S at 65.  The court explained that the knowledge required to satisfy the intent element of aiding and abetting was "whether Rosemond knew about the gun in sufficient time to withdraw from the crime." *Id.*   The plain error of the court's jury instructions in *Rosemond* was that "[t]he court's statement failed to convey that Rosemond had to have advance knowledge. . . that a confederate would be armed." *Rosemond*, 572 U.S. at 82.

In this case, the elements of count 2, aiding and abetting the use, carrying or brandishing of a firearm during a crime of violence, were outlined in Instruction No. 7 as follows: "The prosecution must first prove beyond a reasonable doubt all of the

23

following elements: First, someone committed a robbery of Citizens State Bank. Two, during and in relation to the commission of that crime, someone knowingly used, carried or brandished a firearm." Crim. Doc. 123-1 at 13. Instruction No. 8 stated:

> The elements of aiding and abetting are the following: One, defendant knew that the crime charged was being committed or was going to be committed. Two, defendant had enough advance knowledge of the extent and character of the crime that he was able to make the relevant choice to walk away from the crime before all of the elements were complete. Three, defendant knowingly acted in some way for the purpose of causing encouraging or aiding the commission of the crime charged.

Crim. Doc. 123-1 at 15-16.

Read together, Jury Instructions No. 7 and No. 8 satisfy *Rosemond*. Advance knowledge that a confederate would be armed was established, first, through Instruction No. 7 (stating "during and in relation to the commission of that crime, someone knowingly used, carried or brandished a firearm"). Crim. Doc. 123-1 at 13. The *Rosemond* standard was further satisfied in by the statement in Instruction No. 8 that "defendant had enough advance knowledge of the extent and character of the crime that he was able to make the relevant choice to walk away from the crime before all of the elements were complete." Crim. Doc. 123-1 at 15-16.

In any event, even if counsel performed deficiently in not objecting to these instructions, Jackson has not demonstrated the requisite prejudice to satisfy the *Strickland* standard for ineffective assistance of counsel. Jackson must establish a "substantial likelihood that a properly instructed jury would have acquitted." Jackson has not offered any argument as to how changing the jury instructions would have even nominally changed the outcome. Nor has he shown a substantial likelihood of acquittal, particularly in light of the overwhelming evidence at trial, including DNA, cellphone messages, CSLI and witness testimony. Civ. Doc. 15 at 24.

**B.     Motions to Amend**

24

### 1. Standards

Section 2255 motions are subject to a one-year limitation period. 28 U.S.C § 2255(f); *Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015). Amendments to such motions must generally be filed within the same time period. *Mandacina v. United States*, 328 F.3d 995, 999 (8th Cir. 2003). However, untimely amendments may relate back to the date of the original motion if the original motion was timely and the amendment asserts a claim arising out of the same "conduct, transaction, or occurrence set out . . . in the original" motion:

> To arise out of the same conduct, transaction, or occurrence, the claims must be "tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664, 125 S. Ct. 2526, 162 L. Ed. 2d 582 (2005) (applying Rule 15(c) to a 28 U.S.C. § 2254 petition). An amended motion may raise new legal theories only if the new claims relate back to the original motion by "aris[ing] out of the same set of facts as [the] original claims." *Mandacina*, 328 F.3d at 1000. The facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim. *See Hernandez*, 436 F.3d at 858 (explaining the rationale for Rule 15(c)).

*Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010) (quoting Fed. R. Civ. P. 15(c)(1)(B)).

"To arise out of the same conduct, transaction, or occurrence, the claims must be 'tied to a common core of operative facts.'" *Dodd*, 614 F.3d at 515 (quoting *Mayle*, 545 U.S. at 664 (2005) (applying Rule 15(c) to a 28 U.S.C. § 2254 petition)). "An amended motion may raise new legal theories only if the new claims relate back to the original motion by 'aris[ing] out of the same set of facts as [the] original claims.'" *Dodd*, 614 F.3d at 515 (quoting *Mandacina*, 328 F.3d at 1000). "Thus, it is not enough that both an original motion and an amended motion allege ineffective assistance of counsel during trial." *Dodd*, 614 F.3d at 515 (citing *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the

petition to assert another ineffective assistance claim based upon entirely distinct type of attorney misfeasance."), *cert. denied*, 547 U.S. 1217 (2006)).

### 2. Background

On initial review (Civ. Doc. 7), I found that Jackson's original § 2255 motion was timely. Jackson's direct appeal was denied on January 22, 2019, rendering his judgement final on or about April 22, 2019. The court received his § 2255 motion on March 20, 2019. Civ. Doc. 1. The original § 2255 motion asserted seven claims: (1) ineffective assistance of counsel for alleged failure to challenge probable cause of arrest, (2) ineffective assistance of counsel for alleged failure to challenge seizure of evidence, (3) ineffective assistance of counsel for alleged failure to raise a right to counsel violation, (4) ineffective assistance of counsel for failure to argue a Speedy Trial Act violation, (5) ineffective assistance of counsel for failure to argue a Confrontation Clause violation, (6) ineffective assistance of counsel for failure to preserve the right to appeal jury instructions, and (7) prosecutorial misconduct.

Jackson then filed two motions to amend. Civ. Docs. 19, 23. The first (Civ. Doc. 19) was filed on February 25, 2021, and argues that Jackson is eligible for resentencing based on newly discovered evidence. The second (Civ. Doc. 23) was filed April 12, 2021, and asserts another claim of ineffective assistance of counsel. Both motions to amend were filed over one year after Jackson's judgment was final and are therefore untimely. As such, I can consider the proposed new claims only if they relate back to the claims filed in the original motion.

### a. First Motion to Amend: Post-Conviction Expungement
#### i. The parties' arguments

In his first motion to amend, Jackson asks that the court consider an additional argument to his original motion due to newly discovered evidence. Civ. Doc. 19 at 2.

Specifically, he argues that he is eligible for resentencing due to an alleged expungement of a prior marijuana conviction in Yonkers City Court.  Civ. Doc. 19 at 2.  Jackson states that with this expungement, he would change from a criminal history category III, with four criminal history points, to a criminal history category II, with three criminal history points, thus reducing his guideline range from 78 to 97 months to 70-87 months.  Civ. Doc. 19 at 3.

The Government argues Jackson's motion should be denied as untimely, as it was filed beyond the one-year statutory period and does not relate back to any of his timely-filed claims.  Civ. Doc. 21 at 1.  The Government also argues Jackson's motion should not be considered under Federal Rule of Criminal Procedure 52, as the post-judgment expungement of a criminal conviction does not constitute plain error.  Civ. Doc. 21 at 4.

### ii.    Analysis

As noted above, the "relation back doctrine" requires that a claim in an amended motion must arise out of the same "conduct, transaction or occurrence," and must be tied to a "common core of operative facts." *Johnson v. United States*, 860 F.Supp.2d 663, 713 (N.D. Iowa 2012) (quoting *Dodd*, 614 F.3d at 515).  Jackson's claim regarding the alleged expungement of a conviction, and the resulting impact on his calculation guideline range, does not relate back to any of the timely filed claims.  Jackson's timely claims consist of six ineffective assistance of counsel claims and one prosecutorial misconduct claim.  Civ. Doc. 1.  In his reply brief (Civ. Doc. 22), Jackson argues that had he been aware of the change in New York law, he could have argued it at his sentencing hearing on February 22, 2018.  Civ. Doc. 22 at 2.  However, in the brief supporting his motion to amend, Jackson states that marijuana was not decriminalized in New York until 2019.  Civ. Doc. 19 at 2.  He further states that he did not become aware of this legal development until February 19, 2021.  *Id.*

Giving Jackson's claim the most liberal possible interpretation, I find he is attempting to allege ineffective assistance of trial counsel for failing to argue his New

27

York conviction was expunged issue at his sentencing. However, counsel cannot be constitutionally ineffective for failure to be "clairvoyant" about unsettled law. *See Varner v. United States*, No. 6:17cv334, 2019 WL 2314651, *6 (E.D. Tex. May 30, 2019) ("He cannot show he received ineffective assistance of counsel because the change in law rendering the Texas marijuana conviction inapplicable for enhancement to career offender status did not occur until well after sentencing. The Fifth Circuit has held that there is no general duty on the part of counsel to anticipate changes in the law and 'clairvoyance is not a required attribute of effective representation.'") (quoting *United States v. Fields*, 565 F.3d 290, 294-95 (5th Cir. 2009)); *see also Ragland*, 756 F.3d at 601 ("[C]ounsel's failure to 'anticipate a change in the law' does not constitute ineffective assistance.'") (quoting *Bowersox*, 188 F.3d at 929). Moreover, Jackson's timely-filed claims do not include any claims of ineffective assistance of counsel at the sentencing phase of his case. *See United States v. Hernandez*, 436 F.3d 851, 857 (8th Cir. 2006) ("In order for the claims in an amended motion to relate back . . . they must be of the same 'time and type' as those in the original motion. . . .") (quoting *United States v. Craycraft*, 167 F.3d 451, 457 n. 6 (8th Cir. 1999)). Jackson's proposed claim concerning the alleged expungement of a prior conviction does not relate back to any of his timely-filed claims and is therefore barred as untimely.

### b. Second Motion to Amend: Ineffective Assistance of Counsel
#### i. The parties' arguments

Jackson filed his second motion to amend on April 12, 2021. Civ. Doc. 23. Jackson argues ineffective assistance of counsel based on Johnston's alleged failure to file a motion in limine. Civ. Doc. 23 at 3. Jackson argues Johnston should have filed this motion to exclude certain DNA evidence from his trial and that he was prejudiced because the testimonial evidence elicited from the Government's DNA expert may have confused or misled the jury. Civ. Doc. 23 at 3. I did not direct the Government to respond to this motion.

### ii.    Analysis

Several courts have denied untimely efforts to amend motions for habeas relief when the "ineffective assistance of counsel claim raise[d] an entirely novel ground for relief." *Humphrey v. United States*, No. C19-3023-LTS, 2021 WL 2750339, at \*4 (N.D. Iowa July 1, 2021) (quoting *Johnson v. United States,* No. CV 16-416 (RBK), 2018 WL 2045990, at \*3 (D. N.J. May 2, 2018)); see also *Riggins v. United States*, No. CIV 10-1557, 2011 WL 6210673, at \*5 (E.D. Pa. Dec. 14, 2011) ("Because Riggin's proposed ineffective assistance of counsel claim is not an effort to amplify his constitutional challenge . . . and does not share a common core of operative facts with his sentencing claims, the amendment does not relate back to the date of his original petition."); *cf. Schneider v. McDaniel*, 674 F.3d 1144, 1151 (9th Cir. 2012) ("Schneider's original theory was based on trial counsel's alleged failures.  His amended theory is based on the trial court's alleged errors. The core facts underlying the second theory are different in type from the core facts underlying the first theory. Therefore, relation back is not appropriate.").

To satisfy the "relation back" standard, the allegation of ineffective assistance "must be of the same 'time and type' as those in the original motion, such that they arise from the same core set of operative facts." *Hernandez*, 436 F.3d at 857 (quoting *Mayle*, 545 U.S. at 650, 657, 660, 125 S. Ct. 2562) (held that ineffective assistance of counsel claim alleging that counsel inadequately cross-examined two witnesses did not relate back to a claim for ineffective assistance related to counsel's failure to object to the admission of evidence lacking a proper foundation); *see also Mandacina*, 328 F.3d at 1002 (concluding that counsel's alleged failure to investigate the police report of an interview naming potential suspects was not a similar type of error as allegedly failing to discover exculpatory footprints during counsel's investigation of the case); *cf. Craycraft*, 167 F.3d at 457 (failure to file an appeal is not the same type of error as failure to seek a downward departure or challenge the drug type at sentencing).

29

Jackson asserts that Johnston was ineffective for failing to file a motion in limine under Federal Rule of Evidence 702 to exclude expert witness testimony regarding DNA evidence. Civ. Doc. 23 at 4. The only claim this could potentially relate back to is Jackson's original claim that Johnston was ineffective for failing to file a motion to suppress DNA evidence recovered as a violation of Jackson's Fourth Amendment rights. Civ. Doc. 1 at 6. Both alleged failures occurred prior to trial and therefore satisfy the "time" requirement of the relation back standard. *See Mandacina*, 328 F.3d at 1002 (both claims relating to pretrial conduct by counsel "occurred at a generally similar 'time'").

Regarding "type", Jackson's amended claim alleges ineffective assistance for failure to file a motion to suppress expert witness testimony about DNA evidence. Civ. Doc. 23. The facts alleged in Jackson's original claim (that counsel was ineffective for failure to file a motion to suppress DNA evidence obtained through violation of Jackson's Fourth Amendment rights) are not sufficient to "put the opposition on notice" of Jackson's assertion that Johnston was ineffective for failing to file a motion in limine to exclude expert witness testimony regarding the DNA evidence. *Johnson,* 860 F.Supp.2d at 718 (citing *Hernandez*, 436 F.3d at 858) (finding no relation back where the facts alleged in the original claim were not such that would put the opposition on notice of the issue in the "new claim"); *see also Mayle*, 545 U.S. at 664 n.7 ("[R]elation back is ordinarily allowed when the new claim is based on the same facts as the original pleading and only changes the legal theory.'") (quoting 3 J. Moore, et al., MOORE'S FEDERAL PRACTICE 15.19(2), p.15-82 (3d ed. 2004); *cf. Dodd*, 614 F.3d at 516-517 (finding no relation back where a new claim identified different insufficiencies in trial counsel's challenges to different evidence in different circumstances). Jackson's proposed new claim does not relate back to his original motion and is therefore barred as untimely.

### C. Prosecutorial Misconduct

#### 1. The parties' arguments

Jackson argues the Government engaged in misconduct by eliciting testimony at trial from a witness, Edgar Pauley, that was willfully and knowingly false. Civ. Doc. 1 at 15. Jackson argues that multiple false statements made by Pauley caused prejudice, including statements about "sneakers," a ".38 revolver", and an alleged "lump sum" of money offered to Pauley by an FBI agent. *Id.* Jackson asserts that the Government knew Pauley's statements were false and relied heavily upon this testimony to convict Jackson. *Id.* at 16. Finally, Jackson argues a violation of his Fifth Amendment due process rights due to Pauley's allegedly false testimony. *Id.*

The Government argues Jackson's allegations of prosecutorial misconduct are procedurally defaulted because Jackson failed to assert this issue on direct appeal. Civ. Doc. 15 at 9. The Government further argues that Jackson fails to satisfy the "cause and prejudice" standard necessary to revive such a claim after it has defaulted. *Id.* The Government argues that Jackson provides no cause for his failure to raise his claim of prosecutorial misconduct on appeal and that the legal basis and relevant facts for this claim were known and available to him at the time. *Id.* The Government further asserts there were no circumstances beyond Jackson's control that precluded him from raising the issue on appeal. *Id.*

The Government also argues that Jackson cannot show prejudice. *Id.* The Government asserts that even if Pauley's testimony was false, Jackson failed to establish he was substantially disadvantaged by that testimony. *Id.* Finally, the Government argues Jackson's conviction was supported by "an array of evidence" and therefore the outcome of Jackson's trial would not have been different without Pauley's allegedly-false statements. *Id.*

31

2.      *Analysis*

"[T]he government may not deliberately present false evidence at trial or allow it to go uncorrected." *Johnson*, 860 F.Supp.2d at 846 (quoting *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972)). The Eighth Circuit has explained:

> To establish a due process violation based on the prosecutorial use of false testimony, a defendant must show that "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." *See United States v. Funchess*, 422 F.3d 698, 701 (8th Cir. 2005), *cert. denied*, 546 U.S. 1223, 126 S. Ct. 1452, 164 L.Ed.2d 148 (2006); *United States v. Peterson*, 223 F.3d 756, 763 (8th Cir. 2000).

*Bass*, 478 F.3d at 951 (describing these as the "*Funchess* requirements"); *see also United States v. Boone*, 437 F.3d 829, 840 (8th Cir. 2006); *United States v. Goodson*, 165 F.3d 610, 615 (8th Cir. 1999); *United States v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995).

However, § 2255 motions are ordinarily "not available to correct errors which could have been raised at trial or on direct appeal." *Johnson*, 860 F.Supp.2d at 738 (quoting *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*)). "Procedurally defaulted" claims cannot be the basis for § 2255 relief unless the movant shows "cause and prejudice" or "actual innocence" to overcome the procedural default. *Johnson*, 860 F.Supp.2d at 738 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

After reviewing the record, I find Jackson's claim regarding the alleged prosecutorial misconduct is procedurally defaulted. Jackson did not raise this claim on direct appeal, nor during his trial. Thus, he must demonstrate either (1) actual innocence or (2) cause and prejudice to excuse the default. *Jackson v. Dormire*, 14 Fed. Appx. 713, 714, 2001 WL 403047, **1 (8th Cir. 2001). Jackson does not allege actual innocence and therefore must establish cause and prejudice. To establish cause and prejudice, he must show "(1) 'cause' excusing his double procedural default, and (2)

32

'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 167-68. To show actual prejudice, Jackson must prove not only a "possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 152.

Here, Jackson alleges three instances of false testimony from Pauley. Civ. Doc. 1 at 15. I find that all three instances, even if false, did not work to his actual and substantial disadvantage so as to demonstrate prejudice. *See Frady*, 456 U.S. at 152; *see also Jackson*, 14 Fed. Appx. 713, 714 ("[W]e observe that Jackson has not established prejudice because he has not demonstrated that 'the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'") (quoting *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999)) (emphasis omitted).

First, testimony about a "lump sum" allegedly offered to Pauley did not work to Jackson's substantial disadvantage.[5] As the Government points out, there was an "array of evidence," including DNA and cell-phone records, presented to the jury. Civ. Doc. 15. Pauley's statement about a potential "lump sum" being offered to him has no bearing on the physical evidence in the record. Because that statement, even if false, did not work to his actual and substantial disadvantage, Jackson fails to establish actual prejudice.

Second, even if Pauley made contradictory statements as to who purchased the firearm, such a contradiction does not demonstrate prosecutorial misconduct. *See Thompson v. United States*, 7 F.3d 1377, 1377 (8th Cir. 1993) ("slight changes" in a witness's testimony do not demonstrate that prosecutors knowingly elicited false testimony from a witness.). Moreover, any such inconsistencies do not satisfy Jackson's

---

[5] Jackson alleges that while Edgar Pauley was detained for questioning, FBI Agent Samuels offered him "protection and a lump sum amount of money if he bec[a]me a witness and help[ed] the government." Civ. Doc. 1 at 15. Jackson also alleges that Pauley willfully and knowingly made false and material statements regarding this alleged offer of money while being questioned by Jackson's counsel at trial. *Id.*

33

burden of demonstrating that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. To find Jackson guilty on an aiding and abetting theory, the jury had to determine that Jackson (1) knew the crime of bank robbery was going to be committed, (2) had enough advance knowledge of the character of the crime that he was able to make the relevant choice to walk away before all of the elements were complete and (3) knowingly acted in some way for the purpose of causing, encouraging or aiding the commission of the crime charged. Crim. Doc. 123-1 at 15. Again, there was an "array of evidence" supporting the jury's verdict, including three Facebook videos of Jackson "telling his friend to fire a revolver in the direction of houses in a residential area, firing a revolver at an abandoned building, and dry firing a revolver into the camera." Civ. Doc. 15 at 3. Pauley's testimony about who purchased the firearm, even if false, could not have worked to Jackson's actual and substantial disadvantage.

Finally, Jackson does not demonstrate that he is entitled to relief based on Pauley's testimony regarding the owner of the sneakers. Assuming Pauley's testimony on this issue was false, Jackson has failed to show that it worked to his substantial disadvantage to infect his trial with constitutional error. Considering the other evidence presented to the jury, including Jackson's DNA on zip ties found at the scene of the bank robbery, any issues with Pauley's testimony about the sneakers would fall far short of showing actual prejudice.

Jackson has not demonstrated pervasive constitutional error sufficient to make the actual prejudice showing necessary to excuse his procedural default with regard to his prosecutorial misconduct claims. *See Frady*, 456 U.S. at 152; *see also Jackson*, 14 Fed. Appx. At 714. As such, he is not entitled to assert those claims in his § 2255 motion.

## V.    *CERTIFICATE OF APPEALABILITY*

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held.  28 U.S.C. § 2253(a).  However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  § 2253(c)(1)(A).  A district court possesses the authority to issue certificates of appealability under § 2253(c) and Federal Rule of Appellate Procedure 22(b).  *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right.  *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523.  To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, I find that Jackson failed to make the requisite "substantial showing" with respect to any of the claims raised in his § 2255 motion and his motions to amend.  *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).  Thus, a certificate of appealability will not issue.  If he desires further review of his § 2255 motion, Jackson may request issuance of the certificate of appealability by a

35

judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## VI. CONCLUSION

For the reasons discussed herein:

1.      Jackson's motions to amend (Civ. Docs. 19, 23) his § 2255 motion are **denied**.

2.      Jackson's § 2255 motion (Civ. Doc. 1) is **denied** as to all claims and this action is **dismissed with prejudice**.

**3.**      A certificate of appealability will **not issue**.


**IT IS SO ORDERED.**

**DATED** this 12th day of August, 2021.

_____
Leonard T. Strand, Chief Judge